Glad to hear it. You're all set? Okay, great. All right. Now we'll hear from Ms. Hogan. Good morning. May it please the court, I'm Laura Hogan with my co-counsel Jason Sheffield. We are here to talk with you about the case involving Sherley Beaufils. The district court erred in likely inadvertently failing to include the jointly requested deliberate ignorance charge in the jury instructions. And then the error was compounded by the government arguing deliberate ignorance in an inappropriate way in final closing to the jury. In fact, it was the last words to the jury before they began deliberations, before the jury was charged and they began deliberations. Everyone agrees that the request to charge on deliberate ignorance was made. It was made jointly between the government and the defense. It was not rejected by the court on the record. And it was not included in the final charge that the court argued it. Because no one caught it until we got involved in the appeal, we are looking at a plain error analysis to decide whether that requires this court to give Ms. Beaufils her opportunity to have a free and clean trial with proper jury instructions. Can I ask you a question? Just since we are under plain error, once you get to the latter point of looking at some kind of prejudice, what is it about the government's argument that you think prejudiced your client? The government's argument in several ways was inappropriate. As other circuit courts have talked about with regard to the giving of the deliberate ignorance charge, which should be done quite rarely, it was necessary in this case. But what it did is it actually propounded a shifting of the burden of proof to the defendant to do something affirmatively to find out whether this DMERX system, this fraud, was indeed that. I guess that's the reason I ask is because the district court had already instructed on beyond reasonable doubt, right? Yes. I guess I'm wondering why it is that you think that given that instruction, you know, we assume that juries follow the instructions, why there was prejudice with respect to a burden issue. Certainly. And it's this. It's that the charge is unusual with respect to the burden of proof on the government to prove knowledge that the things she engaged in were in fact not what she understood them to be, in other words, proof reading those records, but in fact were that she was participating in this enormous full out fraudulent scheme to defraud Medicare. And what the government told the jury was, it is just sticking your head in the sand when you should be asking questions. That's simply not the case with deliberate ignorance. If the party has reasonable suspicions and those suspicions are aroused, but then deliberately does or doesn't do something to make further inquiries so that she can remain ignorant of knowledge concerning fraudulent activities, then the deliberate ignorance charge says we're going to substitute actual knowledge for this thing you did or things you did to consciously avoid confirming your suspicions of fraud. In other words, the defendant has to be aware of a high probability of that fact in question and then purposely contrive to avoid learning it. That's number one, your honor, which evidence supports. I'm sorry? Which I believe the evidence presented at trial supports that conclusion. I mean, she was responsible for analyzing records. There were tons of questionable data points in the records that she reviewed and yet she didn't do anything to follow up. And that's exactly why the second point to the answer to the question, why was this misleading, is that with an absence of the deliberate ignorance charge, the jury never got to hear these words. But I must emphasize that negligence, carelessness, or foolishness is not enough to prove positive knowledge. There's no question that when you look at the dry record, the transcript, with a nurse practitioner, that her explanation of checking the box as she testified she was told to do, that was the attestation clause, that that was the mechanism by which the DMERX system, she was told, and she proceeded with, enabled her to send the records back to say, I have proofread this for inconsistencies. I've proofread these records as I've been hired to do at $25 a pop by what appears to be a quite reputable company. When she was hired, when she was recruited to do this, and threw out the entire investigation that, as this court knows, was a multi-million dollar investigation leading to that amount of fraud all over the nation, there was, at the end of this trial, no admission of guilt, no document, no email, no text message, no phone call, no note authored or received by Ms. Bofi that either demonstrated her knowledge or had any wink, wink, nod, nod, let's leave that out. You get what's going on here. There was official looking letterhead. There was impressive advertising. There was sophisticated software. There was a nice looking website. And she was paid by a company check, and she received proper IRS forms for the work she did so that it could be taxed. She had email communications in which she was doing what they asked her to do, to proofread. And when, most importantly, when she, as she testified, she received a call from Cigna, the health insurance company, asking her questions about why this particular brace was ordered, the durable medical equipment, and asked her, she asked them, why are you calling me? You should be calling the provider. And she didn't ever get a good answer to that from Cigna. So she, as she testified, began to hound the folks at RPN, the group that recruited her to do this proofreading, to say, what's going on? Are you all using me inappropriately as a provider? I had been told otherwise. And when she didn't get satisfactory answers and felt that she was getting the runaround, that's when she quit. So just as that jury instruction says, when she had her suspicions aroused, she acted on it. She didn't stick her head in the sand. I, absolutely, everyone would have to concede. This was, at the very least, negligent, careless. But because that's the case, this is the sort of case that called for the deliberate ignorance instruction. As the government would have to argued it to the jury. So for those reasons, the deliberate ignorance passed on as just sticking your head in the sand is not factually accurate with respect to the burden of proof that the government had to try to substitute deliberate ignorance for actual knowledge. And because of that, the government is now saying that while they concede there's an error and the error was plain under the plain error standard, they now say that this didn't affect the defendant's substantial rights. And they don't actually deal with the fourth prong of whether it seriously affects the fairness, integrity, or public reputation of judicial proceedings. The government's misapprehend the argument and the law that we've provided in our brief. They say that the court's other instructions were sufficient and list just straight up burden of proof. But because the burden of proof on this charge was to begin with the government, when you hear from the government, and that's the only place you heard about it, that so long as you're just sticking your head in the sand, not asking questions when you should have asked questions, as the government said as they closed their closing argument, then she's guilty. And for that reason, we would say that this error, this plain error requires the reversal of this conviction. And I'll withhold the rest of my time. Thank you. Thank you very much. And you've reserved four minutes. We'll hear next from Mr. Stuchel. If I got your name pronunciation right, please let me know the correct pronunciation. That's correct. May it please the court. Good morning, your honor. It's James Stuchel for the United States. The district court did not commit plain error by omitting the deliberate ignorance instruction. The standard for plain error is familiar, has four elements. I'll frankly concede that it was a mistake because both parties requested the instruction and it definitely fits the facts of this case. It was definitely not a manifest error. This court's jurisprudence says that for an error to be manifest, there must be binding precedent from either the Supreme Court or this court clearly establishing the issue. In this context, that would require a binding case ruling that in factual similarity exactly like this one. It doesn't necessarily, right? I mean, yes, that's true unless there's some other reason like it's clearly contrary to a statute or something to that effect. In this case also, I mean, the district court was supposed to raise this in the charge conference and there wasn't a charge conference so we've got that error as well. I mean, it seems like we've got some error and some plain error. No, I completely disagree. There's no binding precedent on point that says in this exact factual scenario, a court is required to give a deliberate ignorance instruction. So when she said a minute ago that the government concedes both that there was error at step one and plain error at step two, you're now saying I don't concede step two. That's correct. Okay. I also dispute vigorously step three. There's no reasonable probability that if the court had given the requested instruction, the jury would have returned a verdict of not guilty, not on any count. But by any description, our evidence that she had actual knowledge was not just sufficient, it was overwhelming. I'd like to get into that a little later. But even so, counsel. Well, there might be more questions about the deliberate ignorance. I am actually more interested in the sufficiency of the evidence, especially it's my understanding that she was acquitted as to count one, which was a conspiracy charge, but then convicted of all of the others. How is that possible when the first count reads at least as the overarching indictment against her? There's no prohibition on juries acting inconsistently. I'll be perfectly honest and say I don't see any basis for the acquittal. We introduced 39 examples of her, these false Medicare orders, and she was communicating via email and phone calls with multiple other conspirators. But nevertheless, that is an on which the jury convicted them. And as I said, the fundamental issue is the strength of our evidence that she actually knew she was engaging in fraud. We proved that over and over by really four categories of evidence. In my opinion, the strongest category was her own attestation. It's so important, I'd like to read it verbatim. Quote, I, Shirley L. Boffi, N.P., do hereby attest that the above information is true, accurate, and complete to the best of my knowledge. Unquote. Ms. Boffi made that attestation at least four different times on every single one of the false orders at issue in this crime. That attestation covered every assertion on every false order. It covered every statement of fact about the patient. It covered every report of the so-called examination, which was actually never performed. It covered every professional diagnosis. And most importantly of all, it covered every statement of medical necessity that the brace she was ordering for the patient was medically necessary. The only problem is everyone was completely false. She had, by her own admission, her own testimony at this trial, she never once spoke to one patient, much less actually performed a legitimate medical examination. So what we have here on every single one is her attestation that everything is true according to my personal knowledge, but she had no personal knowledge. That alone is enough to affirm these convictions. But there's so much more. What about her sentence? I mean, she got an obstruction of justice enhancement, and I guess I'm wondering whether or not the jury's verdict, which indicates they didn't believe her, equates to her lying, which is what I understand the district court concluded for purposes of the enhancement. Is that proper? Yes, that's proper. There are numerous cases this court has cited affirming exactly that. For example, recent ones within the last four years, Feldman, Singer, and Stallman all affirmed the district court's imposition of the enhancement finding that the defendant committed perjury in his or her testimony at trial. So solely because a defendant is charged, tried, takes the stand, and is convicted, necessarily that defendant is eligible for this enhancement? No. Okay, so then parse the difference, because I took that to be his question. I have the same question. No, I'm sorry. The district court found her entire defense in a trial was that I didn't know that I was making the final approval. I thought some other doctor was doing all these examinations, and I thought I was just proofreading it for grammatical errors or internal inconsistencies. So her defense consisted of three elements. The first was that she was just proofing for grammatical errors. Well, her own attestation belies that. She didn't attest that this Medicare order contains no grammatical errors and no inconsistencies. She attested much more than that. That's why I read the attestation verbatim. She attested that every single assertion was true to her own knowledge, which of course she didn't have. But just so I'm clear, it's one thing for you to say, let's march through these pieces of testimony and let me show you why the district court didn't clearly err in concluding that there was perjury. It's an entirely different thing to say simply because she was charged, tried, took the stand, and was convicted, she's eligible. She's eligible for a perjury enhancement, right? Right. Your position is to form her. I'm going to march you through and show you perjury, not there's necessarily perjury here. Yes. Okay. Yes. The second element of her testimony was that she didn't have to actually enter any information that was all pre-populated and she just clicked to sign her attestation. We disproved that as well. When she got onto the DMERX website to begin the attestation process, information about the patient, him or herself, that was already pre-populated. That was collected by these telemarketers who were the first part of this vast conspiracy. But the other sections of the website that pertain to the exam, diagnosis, recommendation, treatment goals, and medical necessity, she had to actually affirmatively enter false information there. Those sections contained 19 different sections, each of which had multiple subsections of elements that she had to affirmatively click on to establish the results of the reported examination and the false assertion of medical necessity. So she was affirmatively entering important false information. That was the second basis of her perjury. Her third, she maintained over and over again that other doctors were going reviewing her work and they were making the final attestation. We disproved that. I believe there's a chilling effect here perhaps for criminal defendants. If they testify, they're not believed, then they get charged with perjury and their sentence is enhanced. That's not a concern for purposes of a defendant being able to exercise their constitutional right to testify? No, a defendant has the constitutional right to testify on his or her behalf, but they don't have the right to tell obvious lies. That's what I'm in the process of establishing. It wasn't just that she said, look, I didn't really understand. I didn't know what I was doing. I didn't understand all this complicated stuff. She made these three assertions, each of which we affirmatively disproved. The third one is that some other doctors were making the final attestation. We disproved that so many ways. We introduced 39 of these false Medicare orders into evidence. Every single one of them listed Ms. Bofi as the only provider. Not a single one listed another doctor. One of our key witnesses was a woman who basically was the mastermind behind part of this fraud. She started the two telemedicine companies that actually hired Ms. Bofi. She testified that she never saw a single one in which another doctor was listed on the order. It was only the one like Ms. Bofi who More than that, she actually signed several orders that falsely listed her as a doctor. They falsely listed her as a doctor. She's never been a medical doctor. That's a material misrepresentation. She knew it was false, yet she still signed the order and approved it on the process. There are several examples of that. She claims that she only learned about the fraud when another insurance company, Cigna, called her and told her that she was the only medical provider listed on an order. Yet after that, she signed dozens more of orders under the same pretenses. She didn't take any steps to quit. If she really had an innocent mind, if she really didn't know that this was even knowing she was the only provider on the list. This is three material misstatements she made in her own defense at trial. That justifies the enhancement for obstruction. If you turn back to the deliberate ignorance, we can't overstate the role that deliberate ignorance plays. The best way to determine how important was the evidence is to look at closing argument. That's an attorney's chance to review the evidence for the jury, interpret it for them, and show them how it ought to lead to a verdict in the favor. Let's take a look at closing arguments in this case. My colleague stood up to begin the closing argument. He spoke for 27 pages. He repeatedly emphasized how Ms. Bofi had approved medical records she knew were full of blatant lies about the patients. He used the phrase, quote, Ms. Bofi knew, unquote, 40 times, 38, 39, 40, 4, 0. Not one time in his 27 pages of closing argument did he mention deliberate ignorance. So then defense counsel stands up. Defense counsel's very first statement to the jury was, quote, the issue is whether Bofi had the specific intent to defraud and make false statements. That is what every charge is about. No mention of deliberate ignorance. Defense counsel spoke for 10 pages of the transcript. I mean, but in fairness, that's basically what they were arguing. They were arguing that she didn't know. She didn't know, right? She didn't have the specific intent. She didn't know. I mean, and that's clearly how the government understood it, because then when it came back up on rebuttal, at the end of its rebuttal, it did make the deliberate ignorance argument. Even if, you know, even if you all can't find that she specifically knew, that's not enough. She was an ostrich. She stuck her head in the sand and she didn't ask questions when she should have. I mean, that is, I mean, that's really kind of a paraphrasing of deliberate ignorance, right? This was, yes, this was defense counsel's best chance to persuade the jury that there was no deliberate ignorance. As counsel has conceded, when defense counsel stood up, everyone thought that the judge was going to give the deliberate ignorance instruction. If defense counsel thought that played any role, defense counsel surely would have addressed it before the jury, but she did not. Right, but the problem again is that, I mean, it almost would have been better, right, for purposes of what you're arguing, if the government had argued, made the deliberate ignorance argument that it made at the end of its argument in its original initial closing, because then if the defense had chosen not to respond to that, then, you know, we could say, you know, there's clearly no prejudice because the government threw it out there and they decided not to respond. But here it comes up at the very end of the rebuttal. And so there's nothing to put them on notice that that's what you're going to be relying on. They were already on notice because they expected the judge to give the instruction. And if they thought it played... Yes and no. I mean, yes, that's true. They expected the judge to give the instruction. But, I mean, what is the purpose of arguing deliberate ignorance at the very end without arguing it at the beginning if you don't want the jury to consider it? I mean, what's the purpose of arguing it at all? It was a pure afterthought. My colleague in rebuttal closing mentioned deliberate ignorance. It constituted 12 lines out of 47 pages of closing argument. And I totally dispute that my colleague misstated anything about it. My colleague simply said, the judge will instruct you about this. Now that actually hurts her position because the judge didn't instruct and we presume that juries follow instructions. So if I'm a juror sitting back there saying, this prosecutor mentioned deliberate ignorance and told me the judge would instruct, but the judge didn't instruct anything about it. The prosecutor doesn't know what he's talking about. My colleague simply accurately described it as the ostrich defense. Those are quotations from some of this court's case law. She then just said a statement of the deliberate ignorance standard that she had her suspicions roused by all our evidence of her actual knowledge and should have made further inquiries. There's nothing wrong with that. It didn't place the burden on her at all to disprove deliberate ignorance. In fact, the judge's instructions beginning and after trial said the prosecution has the burden on every element beyond a reasonable doubt. All right. Thank you, counsel. Ms. Hogue, you have four minutes. Thank you, your honor. I will dovetail off of a couple of your questions. If it was an afterthought, it was an afterthought because there was some concern that this is an issue that the jury is going to ask themselves about. She said she did these things for these reasons. And so now let's tell you, let's give you one more cleanup here since they anticipated the evidence. No, your honor. Based on a case even that the government cited in their brief, the Jaffe case, there was overwhelming evidence in this case of a fraudulent scheme to the tune of $1.6 million. And I'll remind the court, she received $37,000 to $38,000 out of it. So it comes out less than 2.3% of this nationwide fraudulent scheme. So yes, overwhelming evidence of a fraudulent scheme. But as Jaffe points out that the government cited, but was it sufficient to prove that she was a willing participant in it? I mean, there is a lot of evidence on that as well. She did check the box every single time and she's listed as a provider in several of those. She receives information from Cygnet that she's listed as a provider and she continues to sign off on those kinds of forms even though she continues to be listed as a provider. I mean, that seems, that's not great evidence for the client. It is. It's troubling. It certainly begins with any juror asking themselves was, or should have asked themselves, was this negligent, careless, or even foolish? But in this instance, what she did to be clear about the attestation form is to click. Now I agree that the attestation form is something that would be foolish or maybe even negligent to click. But if you're told that's what's going to get this back to the provider and there wasn't any box for a proofreader to send it back to the provider, then that's how this all came to be. What we're dealing... But I mean, she, didn't she sign up for Medicare herself at some point to, I mean, she knew what the rules were as far as... She did. And in fact, as a footnote in the government's brief, that should be pumping it to say, so that's even further proof that she knew. That's further proof that she was aware of her own obligations. But it doesn't discount or address that she didn't understand or believe that she was being used to be the provider in these cases. There's government evidence in the case that shows emails where she saw herself listed as Dr. Bofis and immediately sent that one back and said, there's been a typo here. That's what I'm here doing, checking for inconsistencies and typos. I'm not the doctor. You need to fix this. And she was assured it would be fixed. Interesting point, Your Honor, is that I looked up the ostrich defense. And interestingly, what came up is the Cleveland Zoological Association saying it's just a myth that when they're frightened, they stick their head in the sand when they're female and there are eggs in the sand that they've just buried. And it fits it perfectly. Shirley Bofis was working 12-hour shifts at a hospital. I'm about to stop, but I'll finish this up if I may, if you'll allow me. Sure. And she has three girls at home. She has a husband. She has a full life. She's doing this to make extra money for the family. So she's focused with her head, possibly in the sand, focused on her life, her job, her career, her family. It was only when her head was abruptly lifted from the sand by Cigna, by emails, by her inability to get back to Charlene Frame to find out what's going on here and when she wasn't satisfied when she ended it. I recognize that the case law does support an obstruction of justice enhancement for perjury, but it also allows or creates exceptions for mistake, confusion, or faulty memory. It sounds like even if you lose on the deliberate ignorance argument based on just plain error review, how does that help you for purposes of the enhancement issue? I see that as a separate issue, Your Honor. I see that as the judge making an assessment of her credibility on the stand. Certainly when it was brought to his attention, the strength of the government's case on a Rule 29 following the government resting, the court made it very clear this is not an overwhelming case, and this might be something we'll bring up a little bit later. But for now, I think all reasonable inferences from the evidence presented, i.e., this is all circumstantial, will give them sufficient amount of proof to proceed to a jury. So when you talk about what the judge did in adding that two-level enhancement, it is exactly as you described. In the long run, procedurally, and it quells, it quashes the ability of a defendant to be comfortable coming forward and speaking his or her truth. But what Judge Bowen clearly found on the record at sentencing was not so much that I think you have lied from the beginning about what you knew. He focused more on the way in which she answered her questions, the questions that were put to her about what she knew and why she kept clicking that box when it said, I saw this patient, I conducted this examination. And she just And for that reason, is what Judge Bowen said, I don't like the way that you were over here, then you were over there, depending on who's asking your questions. Obviously, you've seen our fourth allegation of error. We have some issues with respect to her preparation, her lack of redirect on these issues. But for this purpose, what the judge did is insert himself as a juror to say, I didn't believe you. And for that reason, I'm going to give you this two-level enhancement, even though there was not a single piece of direct evidence or circumstantial evidence that undid that. And that's why we brought up the court having an issue with Charlene Frame's response that she never saw those things. But Ms. Bofis was never asked if it was Ms. Frame who told her those things. All right. Thank you, counsel. I think we have your argument. All right. The next case is Rosado.